UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY WHEELER.,

    Plaintiff,

v.

                                                                        Case No. 11-cv-11455
                                                                        Paul D. Borman
                                                                        United States District Judge

CITY OF DETROIT,

    Defendant.
_____/

**OPINION AND ORDER
(1) DENYING PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION
UNDER THE FAIR LABOR STANDARDS ACT (Dkt. No. 16);
(2) DENYING PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO FILE
SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF CONDITIONAL
CERTIFICATION (Dkt. No. 30); and
<u>(3) DENYING PLAINTIFF'S MOTION FOR EQUITABLE TOLLING (Dkt. No. 32)</u>**

This case is about the problematic installation of an automatic payroll processing system, which, because of various software glitches, failed to adequately track some employees' hours. This is not a case where an employer intentionally re-classified any hourly employees as salaried to avoid paying overtime, or refused to compensate for off-the-clock work that the employer required, and thus avoided paying the employees the income to which they were entitled.

Anthony Wheeler ("Plaintiff") filed a Complaint against the City of Detroit ("Defendant" or the "City") in Wayne County Circuit Court alleging (1) breach of contract, and (2) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Defendant filed a Notice of Removal on April 6, 2011, alleging that federal jurisdiction exists based on Plaintiff's allegations under the FLSA. (Dkt. No. 1.)

On October 11, 2011, Plaintiff filed a Motion for Conditional Class Certification Under the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b). (Dkt. No. 16.) Defendant filed a Response on November 21, 2011. (Dkt. No. 22.) Plaintiff filed a Reply on December 12, 2011. (Dkt. No. 25.) The Court held a hearing on February 23, 2012.

Subsequently, Plaintiff filed an Ex Parte Motion for Leave to File Supplemental Memorandum of Law in Support of Conditional Certification, (Dkt. No. 30), and a Motion for Equitable Tolling of the Statute of Limitations (Dkt. No. 32).

For the reasons stated below, the Court will:

(1) DENY Plaintiff's Motion for Conditional Certification;

(2) DENY Plaintiff's Ex Parte Motion for Leave to File Supplemental Memorandum; and

(3) DENY Plaintiff's Motion for Equitable Tolling.

## I. BACKGROUND

In 2004 and 2005, in an effort to streamline and automate the payroll process, Defendant City of Detroit purchased and began implementing an automated time-capture program called "Workbrain." After a department has implemented the Workbrain software, employees "clock in" and "clock out" using an electronic card reader or a computer terminal. Workbrain only tracks the amount of time an employee is clocked in, but the Workbrain information is used by Defendant's payroll department to calculate each employee's check.

Workbrain was designed to track the amount of time an hourly employee worked as well as the rate of pay the employee should earn for that time. For example, employees who work non-traditional hours, like nights and weekends, may be entitled under union contracts to "shift premiums." The City's hourly employees also receive overtime and holiday pay. Workbrain tracks

the type of pay an employee should receive by associating a time code with the hours that an employee has worked. (Def.'s Resp. Ex. 2, Information Technology Services Manager Lori Cetlinski Dep. 83.) Defendant's payroll department then calculates an employee's pay based on the time codes and hours generated by the Workbrain system. Currently, Workbrain has been implemented for 28 of Defendant's 32 departments and covers roughly 6,000 City employees. (Pl.'s Mot. Ex. A - Cetlinski Dep. 87.)

Defendant initially expected to implement the Workbrain system over a nine-month period. However, due to the complexity of Defendant's payroll, the actual implementation period required several years.

> Q  What did you think it was going to take in terms?
> A  The initial proposal was for a nine-month implementation. Which, obviously, did not occur.
>
> . . . .
>
> Q  Why was it taking so long?
> A  The City's payroll rules are more complex than anticipated.
> Q  And when you say they're more complex, what were you finding?
> A  There are quite a few different sets of rules within the department. So there's more than 40 unions and there's more than 200 bargaining units. And so each bargaining unit can have slightly different rules. So we had to determine how to group -- properly group the rules and apply those. And then understand what those rules are.

(Pl.'s Mot. Ex. A - Cetlinski Dep. 47.)

If an employee's pay was calculated incorrectly, Defendant had in place a process for reporting pay issues and receiving a corrected paycheck. (Cetlinski Dep. 68.) The correction process was not necessarily contingent on the individual employee noticing and reporting a pay discrepancy. Incorrect payment amounts could also be noticed and reported by the payroll clerk, the employee's

3

supervisor, or Workbrain system support. (Def.'s Resp. Ex. 1 - Human Resources General Manager Kathryn Haves Dep. 69.)

After Workbrain was implemented, several of Defendant's employees complained that they were not properly credited for shift premiums. (Cetilinski Dep. 62-63, 73.) On May 21, 2009, Defendant's Director of Human Resources, Shannon A. Holmes, authored a memorandum to the Detroit City Council President Pro Tem, which stated that since the implementation of Workbrain, the Human Resources Department had received 1,182 complaints concerning payroll. (Pl.'s Mot. Ex. H - Holmes Memorandum.) The memorandum further stated that 632 of the complaints had been classified as "system errors" within the Workbrain program. (*Id.*) Defendant admits that at least a portion of these problems occurred because "[s]hift premium rules were not configured properly initially for many of the employees who work either afternoon or midnights." (Cetilinski Dep. 63.) However, Defendant also asserts that the shift premium issue has been fixed. (Haves Dep. 66, 68.)

Plaintiff works as an hourly employee for the Detroit Water and Sewerage Department ("DWSD"). The DWSD implemented the Workbrain system on or about March 1, 2009. Plaintiff alleges that he has not received the regular and overtime wages to which he is entitled because of flaws in the Workbrain system. In response, Defendant has issued Plaintiff a check to compensate him for his wage issue complaints, but Plaintiff has refused to cash the check, claiming it does not sufficiently compensate him for all of his wage loss.

Plaintiff claims that Defendant should have sent its employees a notice stating that their pay may have been incorrectly calculated after the implementation of Workbrain, and that failing to send this notice constitutes a violation of the FLSA.

4

Plaintiff requests that the Court conditionally certify a collective class action under the FLSA for the following employees:

> All individuals who, on or after March 1, 2009 (or the earlier established date of implementation of WorkBrain), were employed by the City of Detroit and made a claim or who make a claim to The [sic] City of Detroit for overtime pay that is due and owing after the implementation of the WorkBrain computer system. Excluded from the class are any members who have already resolved their claims against Defendant.

(Pl.'s Mot. 1-2.)

## II. ANALYSIS

### A. Conditional Certification Under the FLSA

The FLSA provides that an action may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Courts generally follow a two-stage certification method to determine whether a case should proceed as a "collective action" under the FLSA. *See Olivio v. GMAC Mortgage Corp.*, 374 F. Supp. 2d 545, 547-48 (E.D. Mich. 2004); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). Under the first step, called the "notice stage," the Court only determines whether there are other "similarly situated" putative plaintiffs who may be entitled to notice and an opportunity to "opt-in" to the class action. *Hipp*, 252 F.3d at 1218. At this stage, Plaintiff need only make "a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Olivio*, 252 F. Supp. 2d at 548 (citation omitted). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)).

5

The second stage occurs after other plaintiffs have opted into the class and further discovery has been conducted. *See id.* At the second stage, the Court determines whether the claimants are similarly situated under § 216(b), and if they are not, decertifies the class and dismisses the opt-in plaintiffs without prejudice. *Id.*

In the instant case, Plaintiff has been afforded some opportunity to conduct discovery. Therefore, although his burden in seeking conditional certification is still lenient, Plaintiff must show at least modest factual support for his proposed class. *Pacheo v. Boar's Head Provisions Co., Inc.*, 671 F. Supp. 2d 957, 960 (W.D. Mich. 2009) (noting that "[w]here the plaintiffs have been afforded discovery on the issue of whether or not the action should proceed as a collective action, courts typically apply a more restrictive, but still lenient standard . . . .").

*1. Meaning of Similarly Situated*

In deciding whether to grant Plaintiff's motion for conditional certification, the Court must determine whether Plaintiff has shown that there are other plaintiffs who are "similarly situated." However, the FLSA does not define the term "similarly situated" under § 216(b).

The Sixth Circuit has held "that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all plaintiffs." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009). Accordingly, plaintiffs are similarly situated for purposes of § 216(b) when "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.*

*2. Application to the Instant Case*

Plaintiff has failed to produce evidence of a single, FLSA-violating policy. Plaintiff has

produced evidence showing that the Workbrain system covers approximately 6,000 of Defendant's employees, and that a significant portion of those employees have experienced wage shortages due to Workbrain's flaws in documenting shift premiums and overtime. Plaintiff has also produced evidence showing that Defendant was aware of these flaws with the Workbrain system at least by May 21, 2009, as well as documentation showing various coding issues with Workbrain that appear to affect a range of different employees. (Pl.'s Mot. Ex. E, Production Issues Log.) However, Defendant has put forth evidence showing that there was a policy in place that employees could use to redress shortfalls in their hourly pay, and that after receiving these complaints Defendant fixed the shift premium issue. (Haves Dep. 66, 68.) Indeed, Plaintiff does not dispute that Defendant has such a policy, and admits that he used it after noticing his own pay discrepancies. Accordingly, the record reflects that Defendant had an internal complaint procedure to address wage issues, that its employees used this procedure by issuing complaints regarding improper shift premiums, and that Defendant subsequently addressed the employee complaints by fixing the shift premium issue. The Court finds that, based on these facts, Plaintiff has failed to establish any common, FLSA-violating policy. *See Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 462-63 (S.D. New York 2011) (finding no FLSA-violating policy where plaintiffs could only show that their hours were tracked by an automated system and they were "subject to [the defendant's] formal timekeeping policies . . . .").

Furthermore, the Court notes that Plaintiff cannot claim that usage of Workbrain, by itself, constituted a FLSA-violating policy. The record reflects that Workbrain accurately recorded the number of hours employees worked. Although it did occasionally assign an incorrect payment code to certain hours, Defendant fixed this issue after receiving employee complaints pursuant to its

internal procedures. *See Zivali*, 784 F. Supp. 2d at 461 (finding timekeeping system was lawful "as long as it allows for the complete and accurate recording of all time worked by Mobility employees.").

Plaintiff admits that Defendant had remedies in place for employees who did not receive their shift premiums, but argues that these remedies first require the employees to be on notice that their pay may have been miscalculated. Plaintiff thus asserts that Defendant violated the FLSA by failing to notify its employees that their pay may have been miscalculated after implementation of Workbrain.

However, nothing in the FLSA prohibits Defendant from relying on its own payroll department to catch and report errors in the paychecks that it issues. Furthermore, the FLSA does not prohibit Defendant from relying on its supervisors to catch and report errors in the paychecks of the employees they supervise, or from relying on individual hourly employees from catching and reporting errors in their own paychecks. Indeed, this appears to be how Plaintiff became aware of his own allegedly insufficient paychecks.

Plaintiff has thus failed to show a common FLSA-violating policy, and his Motion for Conditional Certification under the FLSA is therefore denied.

### B. Plaintiff's Ex Parte Motion for Leave to File Supplemental Memorandum

On February 24, 2012, after the hearing on this matter, Plaintiff filed an Ex Parte Motion for Leave to File Supplemental Memorandum in Support of Conditional Class Certification. Plaintiff seeks leave to submit evidence that employees effected by the shift-premium issue in Workbrain did not receive pay adjustments. The Court notes that Plaintiff's Motion to Certify under the FLSA was filed on October 11, 2011, and his Reply was filed on December 12, 2011. The hearing on his

Motion did not take place until February 23, 2012. Plaintiff had ample time to supplement his pleadings with additional evidence prior to the hearing.

Plaintiff's proposed evidence also does not change the Court's above reasoning: that the Defendant's existing policy and process for addressing employee complaints regarding paycheck shortages does not violate the FLSA. Furthermore, Plaintiff's proposed evidence offers no support for his theory that Defendant's failure to notify every employee regarding the shift-premium issue in Workbrain constitutes a violation of the FLSA. Accordingly, Plaintiff's Ex Parte Motion is denied.

**C. Plaintiff's Motion for Equitable Tolling of the Statute of Limitations**

Plaintiff's Motion for Equitable Tolling is contingent on the Court granting his Motion for Conditional Certification. Because conditional certification is denied, Plaintiff's Motion for Equitable Tolling is also denied.

### III. CONCLUSION

For the reasons stated above, the Court will:

(1) **DENY** Plaintiff's Motion for Conditional Certification;

(2) **DENY** Plaintiff's Ex Parte Motion for Leave to File Supplemental Memorandum; and

(3) **DENY** Plaintiff's Motion for Equitable Tolling.

**SO ORDERED.**

_____
PAUL D. BORMAN
UNITED STATES DISTRICT COURT JUDGE

Dated: 4-3-12
Detroit, Michigan